This next case is case number 4-17-0401, People v. Curtis Lovelace. Appearing for the appellant is attorney Lindsay Hagey. Yes. Okay, thank you. And for the appellee is attorney Luke McNeil. Ms. Hagey, are you ready to proceed? Yes, I am. Thank you, Your Honor. You may. Your Honors, and may it please the Court, I am Lindsay Hagey, and I represent Mr. Curtis Lovelace. I briefly outlined many reasons why the assessment of a $35,000 bail bond forfeiture penalty against my client after he was acquitted was unconstitutional. This afternoon, I hope to argue the bail bond cost statute's unconstitutionality under both the Supreme Court case of Nelson v. Colorado and the Illinois Supreme Court case of People v. Cook. Though, of course, I'm happy to take any questions on any of our arguments. My client, Mr. Lovelace, was found to be indigent and then acquitted of all criminal charges, yet he was assessed a $35,000 bail bond forfeiture penalty. First, the imposition of any monetary assessment on an acquitted person violated due process under Nelson v. Colorado. This is a shocking deprivation of property not rationally related to any government interest. Second, the 10% bail bond retention was unconstitutional under People v. Cook because it was imposed without regard to Mr. Lovelace's ability to pay. In regards to the first argument, 725 ILCS 5-110-7F, imposition of a 10% bail bond forfeiture on acquitted defendants violated due process under Nelson v. Colorado. As I've said, Mr. Lovelace was acquitted. In Nelson, the Supreme Court examined the question that's relevant here. When a criminal conviction is invalidated, is the state obliged to refund fees, court costs, and restitution when there is no conviction? The Supreme Court said our answer is yes. There is no conviction here, and the process is similarly deficient for Mr. Lovelace. Does the Supreme Court in Nelson say that the state is obliged to refund fees, court costs, and restitution exacted upon the defendant upon and as a consequence of the conviction? It's true. They do say that. Did they mean it? When you say, when they do say it, I mean, what does that mean? Well, I think that the concern that animated their decision there also exists here in that they don't want innocent people to be saddled with a tremendous financial burden with that. I think in this case also, although he was not convicted, it was still tied to the offense. Well, wasn't the bail bond fee in this case, wasn't a consequence of the conviction? It was tied to the conviction because it was imposed in relation to the offense. There was no conviction for it to be related to. I meant to say it was tied to the offense because it's imposed in consideration to the offense, and under Illinois law, that makes it, it can't be a cost or a fee. It would have to be a penalty, which makes it essentially tied to the offense. And that is violating due process under both Nelson v. Colorado and Illinois state law. Jones, where you have to look very carefully, a cost or a fee has to be tied to compensation to the state for services provided. And the bail bond cost statute doesn't do that. So in the Supreme Court decision, they balanced the factors under Matthew v. Eldridge. If there's a private interest affected, there wasn't. Nelson there is here. My client has an obvious interest in recouping the money paid to the state. And in this case, because it really is a fine, it can't be a cost or a fee under Illinois law, then it's even more vulnerable under Nelson. And in the second factor, is there a risk of erroneous deprivation? Certainly there is. There is not a way to, there's not a procedure under Illinois law to recoup the bail bond costs. Especially from an innocent person. And then finally, the state does not have an interest in retaining the money. This is a penalty. Whatever cost was attendant to my client being out on bail was covered by the electronic monitoring fee, which we are not contesting. This $35,000 is clearly a penalty. And the state has no interest in keeping it. So as in Nelson, the balancing test weighs decisively for my client and shows that Section 7F is unconstitutional. The next point that I'd like to make is that the bond forfeiture statute is also unconstitutional because it fails to require judicial consideration of the person's ability to pay. And Cook involved the old version of 7G of the same statute that provided for reimbursement to the state of public defender fees, which in that case was a fee that was tied to services provided to the defendant. Unlike here, where the state argues that it's tied to the function of the overall bail bond system, but not that it's tied to actual services provided to my client, which makes it can't be a cost or fee under Illinois law. And even there, where it was a fee, the court still needed to give the defendants an opportunity to show that they were indigent. That didn't happen here, and it's not required under the statute. And for that reason, it's indistinguishable from Cook, where they applied rational basis. And under rational basis, this statute also fails. It is not tied to a legitimate state interest, and there needs to be an indigency determination. So I'll continue to my next argument, which I've touched upon the fact that this is a penalty under Illinois law, which has been very careful, as exhibited under People v. Jones, in distinguishing a cost, a fee, and a fine. So a cost and a fee, the main factor for determining whether something is a cost or a fee is whether it's compensatory in nature. There's no argument here that this is compensating the state for any service provided. And so it cannot be a cost or a fee, and it's necessarily a penalty, which makes it an excessive fine under the Eighth Amendment, and also an unproportional fine under the Illinois state constitution, because there cannot be any fine imposed when there is no conviction. There's no offense. There can't be a fine. And again, any costs that were provided, expended by the state for my client to be out on bail, were covered by the electronic monitoring fee. And obviously the cost here is not, it does not smack of administrative detail the way that arguably it did under Show Boy. That was $7.50. That was 46 years ago, before decades of important Illinois law distinguishing court costs, fines, and fees. And before there were so many other court costs, fines, and fees, like the bail bond monitoring, that covers the cost. So Shilb applied rational basis. And rational basis here also shows that now the way that the statute is applied is unconstitutional, because it's no longer an administrative detail. $35,000 is not administrative detail to anyone, and it does not cover the cost of bail bond, and it hasn't been argued that it does. Under Illinois law, if money is used for a general fund of a service, that's a fine. And my client cannot have a fine because he has been acquitted. And the law should also be struck under the Equal Protection Clause and the Illinois Uniformity Clause, because under the current statute, if someone uses bail in Cook County, they only pay $100. That's unfair to the rest of the state, unfair to my client. And it shows that it is not a cost or fee, because how could it cost $100 in Cook County, but it costs $35,000 in Adams County. It doesn't make sense. And it shows that the way that the bail bond cost statute exists now is a penalty charged in relation to the offense, and not in relation to any service, like a transcript fee or a jury fee, provided by the state. I was anticipating some more questions. I ran through pretty fast. When was the last time the Illinois Supreme Court held unconstitutional a statute on the grounds that applied in Cook County differently than it did elsewhere in the state? I'm not aware of that. Is that of some significance? No. Aren't there dozens of statutes that say in counties in excess of 3 million people and then whatever? Have any of those ever been held unconstitutional? You know, I would ask for a supplemental briefing to address that. You mean this is a surprise question? Isn't that the whole essence of your uniformity argument? Well, I mean, I don't think that it is. I think it still shows that the statute is being applied unfairly here. And it also shows that this is a penalty. Unfairly isn't the criterion. The criterion is, is there any possible reasonable explanation for why the legislature might have decided in counties in excess of 3 million as opposed to every other county in the state? I mean, there may be, but there's no difference between Cook County and Adams County where bail bond costs cost $100 in Cook County and $35,000 in Adams County. So, therefore, as members of the legislature, we should vote to approve that statute. But the legislature passed it. The criterion for us to hold it unconstitutional is that there's no possible justification. And it would be helpful if you could ever cite to us a case in which the Supreme Court of Illinois has agreed. Well, I would ask for a supplemental briefing to do that. But I also believe that that doesn't affect the constitutionality here. And I also think the difference here Well, you argued the uniformity clause. It affects that, does it not? The whole essence of your uniformity clause argument? Yes, but I still think, regardless of what the legislature has chosen to do in other statutes, it's still unfair here. It's still $35,000 to $100. And if we're saying that the purpose, as the state is saying that the purpose is to fund the bail bond system, it doesn't cost more downstate. And why should downstate counties fund the entire system more than Cook County? Maybe it's just the benefit of volume pricing. There are more bail bonds in Cook County than there are in Adams County. It spreads the cost around. Well, that may be, but that does not make the statute constitutional as applied to my client. And I think also when you're looking at $35,000, that could affect the liberty interest in that somebody may choose not to go out on bail because of that staggering cost. And there's no reason that somebody downstate should be faced with that choice and somebody in Cook County shouldn't be. Well, I'll proceed to my conclusion, and then can I reserve the rest of my time for, okay. You get five minutes automatically. Right. Okay. So Cook and Nelson both require there to be a rational relationship between the state depriving someone, especially an innocent person of their property or affecting their rights, and a legitimate state interest for doing this. There is no rational relationship between Section 7F, which does not provide any protective procedures for indigent, acquitted people facing a tremendous loss of property, and therefore Section 7F must fail under both the Illinois Supreme Court case of People v. Cook and the Supreme Court case of Nelson v. Colorado. For that reason, we request that this court declare Section 7F unconstitutional. Alternatively, my client asked the court to vacate the forfeiture order and declare Section 7F unconstitutional as applied to him. And at the very minimum, we would ask that the court vacate the bond forfeiture order and remand the matter for a hearing on my client's ability to pay. Thank you. All right. Thank you, Ms. Hagey. You'll have time in rebuttal. Thank you. Mr. McNeil? Mr. McNeil, at the outset here, could you address the uniformity clause argument and explain how it is that the discrepancy between Cook County and the rest of the state in terms of the amount withheld satisfies the uniformity clause? As Justice Steigman pointed out, Cook County is often treated as a different animal. Platt, the federal persuasive authority that I cited, had a similar argument about the uniformity clause. He had a $20,000 bond. He argued that that violated the uniformity clause as to those Cook County arrestees that paid only a $100 cap. That court stated that the Illinois legislature has now amended the bail statute to cap bail fees at $100 does not mean it lacked a rational basis for previously charging more than that if bail was set higher. That makes sense here if we just add Cook County to that instead of a prior amendment, which is what Platt was arguing there. Cook County, presumably, they allocate funding from somewhere else, or as Justice DeArmond said, they're exponentially bigger. It's one of the biggest cities in the U.S. That's what I want to know. I want to know what are the bases or the rationale for having what, in this instance, is a vast difference in the amount of bond withheld. I looked for legislative history comments as to why they made this distinction. In this case, I couldn't find anything on point besides Platt. Was that from the district court or the appellate court decision in Platt? This was the district court, so it was not the Seventh Circuit. But their logic is sound. They state the Illinois legislature appears to have chosen to decrease the extent to which bail fees fund the bail system. That's true, apparently, in Cook County, not the rest of the state, which still follows the decades-old 1% of the total bail amount. The question you asked, Ms. Hagey, was not the rhetorical one. I don't think, but I'm curious. Maybe I'm mistaken. I do not think, or at least I don't recall it the last time, if ever, the Illinois Supreme Court has declared a statute unconstitutional in violation of the Uniformity Clause because it had a different provision for a county in excess of three million, which is only Cook County, as opposed to the rest of the counties in the state of Illinois, on any basis. It's a very common phrase in statutes I run across. Are you familiar with any such case? Did you come across any? I can't say that I looked too hard, but I did not find any that violated that. And it is a common phrase. Counties with a population of over three million people is a very common phrase in Illinois statutory authority. The point of Platt is that even assuming Cook County has moved away from this and capped it at $100, that does not mean that there's not a rational basis to continue the 1% system in the rest of the state, especially considering the strong government interest there is in keeping this fee as 1%. Appellant arguments basically rely on two erroneous assumptions. One, that this is a penalty or a fine. It's clearly not. It's not a punitive in nature. It does not matter at all what the outcome of a trial is, if there's a conviction or an acquittal. This has to do with the time before trial and during trial. It doesn't matter what happens to a defendant or an arrestee after that. So it should not be considered a penalty or a fine because punitive measures aren't taken into account. The second assumption is that this is based on a fundamental right, like in Cook and Love. Those two cases apply to the fundamental right to counsel and whether an indigent defendant can pay for that. Schill stated over 40 years ago that this is not a fundamental right and can hardly be classified as a fundamental right or based upon any suspect criteria. Schill bestowed good law. Schill speaks directly to this statutory section and held that not only is it constitutional, but it does not violate equal protection. Platt, it's a much more recent case if we're going to act like Schill is antiquated or whatever. Platt applies Schill throughout the whole thing and the analysis in Platt is sound as well. Platt mentioned three strong governmental interests. One that Appellant completely ignores is that the 10% fee makes the full bond deposit system more enticing. There has to be some fear Section 110.8 would not exist. Section 110-8 is the full bond deposit system. Also, I would point to Appellant's reply brief. They incorrectly state that 110.8 you can't pay that full bond by cash. Clearly you can. I don't know if that was a misreading or a misstatement or what, but that part of their brief should be disregarded. The first subsection of Section 110.8 discusses paying the total bail amount in cash. If there's no fee in Section 110.7-F, there would be absolutely no reason for anyone to ever pay more than 10% of their bond deposit. The Appellant also fails to recognize that the State then bears 90% of the liability just as a bail bondsman would in the old days. They take 90% of the liability of that bail on for that time period. This is not a fundamental right. This is a benefit to those defendants. They only have to pay 10% of that bail in exchange for a 10% fee or 1% of the total bail amount fee. The second strong governmental interest is that it is a flat percentage fee. It's simple. It's easy to administer, and it also fluctuates with the State's liability. Of course, the higher the bail amount, the exponentially more liability the State has in that 90%. This also ensures that all people enjoy the benefits of Section 110.7-F exactly equally. It's 1% no matter what. That takes care of any equal protection argument as Shield and Platt both held. The third strong governmental interest is that the bail bond fee defrays the cost of administering the bail bond system, both the administrative costs as well as the cost of those who jump bail. I would also add that the service that Appellant argues there's no service that somebody is getting, they're getting the service of only having to pay 10% of their bail. In other words, the State is on the hook for the other 90% of the liability or risk. That is a cost that should be considered in this section as part of that administrative cost, and I think that both Platt and Shield hold that. As far as Cook and Love, they, again, had to do with a fundamental right, right to counsel. That means that they're not analyzed under rational basis, the highly deferential rational basis standard. Here, I just gave you three strong governmental interests that are rationally related, and pursuant to Shield and Platt both, I would say that the facial constitutional challenge must fail. As for due process, Appellant misconstrues the Nelson v. Colorado, the more recent Supreme Court decision. In there, in Nelson, the Supreme Court held that a Colorado statute called the Exoneration Act. It violated due process by requiring a defendant whose conviction had been vacated to prove their innocence again by clear and convincing evidence in order to obtain a refund of costs, fees, and restitutions paid pursuant to the invalid conviction. That's the important phrase there. As Justice Steinman pointed out, this is not pursuant to any conviction. This has nothing to do with whether a defendant is convicted or acquitted. It has nothing to do with the outcome of any trial. Therefore, it's hard to say what due process is being violated here. There's no process at all. It's a 1% fee. It's junior high math calculated. Just move the decimal point over two spaces, and that's how much they pay of the total bound amount. And if they want to avoid that fee, it's easy. You go through Section 110-8 either by real estate or stocks or bonds or by cash. Otherwise, as Platt points out, there would be no incentive to use the full bond deposit system. Nelson's instructive, though, for one reason, and that's that they use the Matthews test. That weighs three factors to determine whether procedural due process is violated. Platt, again, it was the district court, not the appellate court. However, they have already applied the Matthews factors to this exact statutory section and found all three weigh heavily in favor of the state. The first factor is the private interest to be affected by the government's action. Platt stated, because there's no fundamental right to be free from administrative fees, which is what this is, the payment of a bond fee does not trigger any heightened level of private interest. So that weighs heavily in favor of the state. The second Matthews factor is the risk of an erroneous deprivation. Here, Appellant is not even arguing that bail was incorrectly calculated or that the bail amount itself is improper. In fact, they went through a procedural hurdle, a procedural guideline, and moved to reduce the bail, and that was granted. So the risk of an erroneous deprivation of too high a bail here is minimal, especially in this case. And then the risk of an erroneous deprivation of this fee is almost impossible as simply 1% of the total bail amount. So the second Matthews factor also weighs heavily in favor of the state. And the third and final one is the government's interest, including any administrative or financial burdens that additional procedural safeguards would impose. I already told you about the three strong governmental interests. The state of Illinois, of course, has interest in collecting fees to support the administration of the entire bail system. If the defendant does use the 10% system, the state has a 90% liability or risk interest. The government, of course, maintains a legitimate interest in reducing its exposure. You argue the Platt cases to us. Those are the two federal court decisions. Yes. The Appellant is correct that they're not binding on this one. No, they're just persuasive, but I would argue that they are very persuasive and that the logic is sound in them, mainly because they rely on Shilb almost throughout. And Shilb is the seminal case. Well, part of the argument is the most recent Platt case didn't discuss or take into consideration Nelson, and we ought to disregard it because of that. What do you have to say about that? Well, Nelson is talking about cost fees and restitutions pursuant to an invalid conviction. Here, the fee is not tied to any conviction. It's also not a restitution or a fine or anything like that. As far as Platt, well, Platt does talk about the Matthews test. Platt applies the Matthews test throughout. That's all. I mean, Nelson did the same thing. I know Platt did not acknowledge Nelson, but Nelson came to its conclusion by exclusively applying the three Matthews factors, and Platt did the same thing. That's why. And it's a similar really high bail. Platt was $20,000. This is $35,000. Both of them are obviously multiple times higher than the $100 cap in Cook County. And, again, the uniformity clause issue in Platt was also soundly rejected for reasons I already discussed. Finally, the trial court's abuse of discretion. They did not abuse or abdicate their discretion in this case. First, the record clearly established that the trial court specifically stated it knew it had discretion to give back more than 90% of the bail. It stated that exact thing on the record. It just chose not to use that discretion. It mentioned the length of the proceedings. This was an eight-month trial. The fact that the fee encourages compliance and the fact that the bond deposit fee funds the costs. All three of those are legitimate government interests brought up in both Shield and Platt. The court did say that it never saw less than 10% bond fee in its many years on the bench. However, that comment didn't suggest some sort of foregone conclusion or a rigid policy or anything like that. That was in the context of explaining the lack of authority in any case, any case law holding an abuse of discretion when the trial court did not give back less than 10%. The only cases, appellate sites, are cases where the trial court specifically stated on the record, mistakenly, that they didn't have the discretion. They did not know that they had the discretion to give back more than 90%. Here, we know that's not the case. The trial court specifically stated that on the record. So there's no arbitrary or unreasonable decision here. The trial court did not abuse its discretion. And if this court has no more questions, I would ask to affirm the trial court's decision. Thank you. Ms. Heigy, you're up. As recognized during my initial argument and during the appellee's argument, the Platt case is not binding on this court. And I also do not believe it is persuasive. It ignores 40 years of very careful Illinois law determining what is a cost and what is a fine. And there, they kind of blithely say, well, this is a cost. And they say it's a cost in relation to the bail bond system in total. That's not what Illinois does. Illinois, if a cost is imposed to fund something generally, that's a fine. And it's a fine here. To be a cost or fee, it has to be tied to some expense of the state incurred in the litigation. And that's a penalty. And you can't say that Nelson does not apply simply because there was not a conviction, because they were concerned with depriving innocent people of property. So in a way, it's there they were looking at $100, you know, $1,000, and that you need to have, as the appellee said, in this case there's no process at all. So that fails under Nelson. That process was too onerous. This is no process. You need to have some process to recoup the fees if you're innocent. And it can't be that the Supreme Court concerns themselves there with $100, $1,000, and here $35,000 with no relation to any expense incurred by the state is okay just because my client was acquitted on the first instance. That just can't be. That has no rational basis in anything. And I think that that is really exhibited by the $100 exception for Cook County. It was not – if it only costs $100 to administer the bail bond cost in Cook County, you know, how big it is, how can it cost $35,000 in Adams County? And when the judge said, well, that's basically how the clerk funds their office, if that's an indication of legislative intent and what's happening here, that is a fine. There's no argument, and the state doesn't make one, that this is related to some actual service provided. If we're just saying, well, the state had to bear the risk at the time this was imposed, the risk was done. He was acquitted. There was no risk anymore. That $3 million that he should have spent, he should have just given the whole $3 million and got it, that's a fiction. That's not a real thing. And I think it shows why this statute is unconstitutional, because people don't have that kind of money. It's not you can choose the 1% or you can choose to give $3 million. You'll choose jail. And that does implicate a liberty interest. And Cook does apply here because they applied the rational basis test. They didn't say this is a fundamental right, so we're going to apply strict scrutiny. No, they applied rational basis, and as the Supreme Court said in Jones, it's not toothless. And it wasn't toothless in Cook, and it's not toothless here. There needs to be a rational basis for imposing here $35,000 on an innocent person. And we're not contesting the $5,000 that was the cost associated with him being out on bail. $35,000 with no expense by the state. And the Illinois courts have been very careful to determine what's a fee, what's a cost, and what's a fine. And they look at, you know, even under the Probation Court Services Fund, the 4th District only charges that when probation has actually done an assessment. That's $10 on somebody who's been convicted. So we're not going to, we're just going to take Schlibb and Platt's word for it that this is a cost. They looked at the system in total for an innocent person. We're just going to say, well, okay, we really worry about $10 on somebody who's convicted, but we're not going to worry about $35,000 on somebody who's innocent because 46 years ago when this system was first in place, we said it smacks of administrative detail. That was $7.50. $35,000 can never smack of administrative detail. And Platt was erroneous for two reasons. Ms. Hagey, you're out of time, but allow you to summarize here. It's erroneous because it does not consider Nelson, and that's a problem. You need procedure before you can take somebody's property rights, especially from an innocent person. And two, it just, again, assumes this is a cost and that it's legitimate to fund the system in total. And it's just not. That's a penalty. And it is imposed in relation not to the conviction, but in relation to the offense. And that to be a fee, it has to be related to some compensation to the state for a service provided. Thank you, Ms. Hagey. Thank you both. The case will be taken under advisement, and a written decision shall issue. The court stands in recess.